UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANNE P. POMERANTZ, Acting
Regional Director of the
Nineteenth Region of the
National Labor Relations Board,
for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,

    Petitioner,

v.

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION, LOCAL 4,

    Respondent,

    and

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION, LOCAL 8,

    Respondent,

    and

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION,

    Respondent.

Case No. 3:13-cv-1676-AA

OPINION AND ORDER

_____

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Before the court is Petitioner's Petition for Further Civil Contempt (doc. 68). Petitioner seeks an order finding Respondents International Longshore and Warehouse Union and its Locals 4 and 8 (the Union), as well as their officers, agents, employees, attorneys, affiliated locals, and all members and persons acting in concert or participation with them, in civil contempt of the court's order and injunction issued on October 15, 2013. This petition arises from the Union's conduct beginning on April 12, 2014 and continuing for several days afterward.

## BACKGROUND

On October 15, 2013, the court enjoined the Union from picketing Tidewater Barge Lines, Inc. (Tidewater) pending the resolution of a proceeding before the National Labor Relations Board (NLRB). The Union's picketing arose from a labor dispute between the Union and two grain companies: Marubeni-Columbia Grain, Inc. (CGI) and Mitsui-United Grain Corporation (UGC). Tidewater alleged that the Union was engaging in unlawful secondary picketing of Tidewater barges and spud barges on the Snake River when Tidewater tugboats attempted to transport grain barges to CGI's downriver grain facilities. I agreed that the Union's picketing likely constituted unlawful secondary picketing under the National Labor Relations Act (NLRA) and

2 - OPINION AND ORDER

enjoined the Union's picketing of Tidewater until the NRLB issued a final decision. See Opinion and Order (doc. 30) (Oct. 15, 2013); 29 U.S.C. 158(b)(4).

However, the Union did not cease its conduct and continued picketing Tidewater barges and spud barges. Accordingly, on October 31, 2013, I found the Union in contempt and imposed a suspended fine schedule.

Several months later, in April 2014, members of Respondent International Longshore and Warehouse Union, Local 4 (Local 4) began water-borne picketing at a Tri-Cities Grain (TCG) facility in Pasco, Washington. Specifically, on April 12, 2014, a Local 4 picket boat approached the Tidewater tug boat "Captain Bob" as it attempted to retrieve a loaded Tidewater barge moored at TCG. Apparently, the barge - Barge 83 - was loaded with grain bound for UGC. Ex. A. Three individuals on the picket boat waved picket signs that said "ILWU" and "UGC Unfair." See Exs. B, C. Captain Bob's crew eventually abandoned its attempt to reach the barge. See Ex. B.

On Sunday, April 13, 2014, the Tidewater tug boat "Chief" attempted to retrieve Barge 83. As the Chief approached the barge, Local 4's picket boat again resumed picketing. See Exs. B, D. Three individuals waived the "ILWU" and "UGC Unfair" picket signs until the tug boat crew abandoned its attempt to reach the barge.

3 - OPINION AND ORDER

On Monday, April 14, 2014, the Tidewater tug boat "Rebel" also attempted to retrieve Barge 83, still docked at TCG. Ex. E. Once again, Local 4's picket boat displayed the signs "ILWU" and "UGC Unfair" and picketed the Rebel as it attempted to approach the barge. Ex. E (and video exhibits). Eventually, the Rebel left without the barge.

On Wednesday, April 16, 2014, several Local 4 members stood near the entrance to Tidewater's Pasco fuel terminal, carrying signs that read "ILWU" and "UGC Unfair." See Ex. E. Tidewater's Pasco fuel terminal is adjacent to TCG and shares a common driveway. Additionally, Tidewater is part-owner of TCG. See Exs. A, B. According to Petitioner and Tidewater, neither UGC nor CGI has any affiliation, presence, or employees at or near the TCG facility in Pasco.

When the Union discovered Tidewater's ownership interest in TCG, the picketing ceased as of April 17, 2014. Until that time, Barge 83 remained at TCG's dock due to Local 4's picketing, preventing Tidewater from moving another empty barge into position at TCG's dock. See Ex. A. Consequently, TCG was unable to unload any grain from Saturday, April 12 through April 17, and Tidewater was unable to transport seven additional grain barges downriver to other customers. Tidewater allegedly experienced a net loss of approximately $10,500 for each barge that was not shipped downriver.

4 - OPINION AND ORDER

On April 18, 2014, Petitioner moved for an order finding the Union in contempt, lifting the fine suspension, and awarding fees and damages to Tidewater for the Union's contemptuous conduct in October 2013 and April 2014. Subsequent to its petition, Petitioner informed the court that an ALJ in the underlying NLRB proceeding had ruled against the Union and found it had engaged in unlawful secondary picketing of Tidewater in violation of § 8(b)(4) of the NLRA. See Status Update (doc. 73). A final decision is pending before the NLRB.

## DISCUSSION

A party moving for civil contempt must demonstrate a violation of a specific and definite court order by clear and convincing evidence. Ahearn v. Int'l Longshore & Warehouse Union, 721 F.3d 1122, 1129 (9th Cir. 2013); Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006). While the contempt "need not be willful," a party should not be held in contempt if the contemptuous conduct is "based on a good faith and reasonable interpretation of the court's order." Reno Air Racing, 452 F.3d at 1130 (citations omitted). "Although the district court generally must impose the minimum sanction necessary to secure compliance, the district court retains discretion to establish appropriate sanctions." Lam v. City & Cnty. of San Francisco, 868 F. Supp. 2d 928, 939 (N.D. Cal. 2012) (citations omitted).

5 - OPINION AND ORDER

Petitioner contends that the Union violated the court's order by picketing Tidewater at the TCG facility, a neutral site not affiliated with UGC. Petitioner emphasizes that the injunction prohibited the Union's picketing of Tidewater if the purpose of such picketing was to coerce or restrain Tidewater from doing business with or providing services for CGI or another company. In response, the Union argues that Petitioner's interpretation of the court's injunction expands its purpose and scope and would prohibit lawful, primary picketing at UGC facilities. The Union's argument is not well taken. The whole point of the Petitioner's initial petition and this court's injunction was to enjoin the Union's picketing of Tidewater at neutral, secondary locations, and the injunction was entered in that context. Opinion and Order at 13-18. Regardless, Petitioner does not seek to expand the injunction's prohibitions; rather, Petitioner seeks to enjoin the Union's continued picketing of Tidewater at neutral sites.

The Union next argues that Local 4's conduct did not violate the court's injunction, because the injunction specifically prohibits picketing at Tidewater facilities directed at the Union's labor dispute with CGI. The Union emphasizes that the April picketing did not occur at a Tidewater facility and addressed the labor dispute with UGC, not CGI. Further, the Union contends that it was unaware of Tidewater's

6 - OPINION AND ORDER

ownership interest in TCG until April 16 or 17, when Local 4 immediately ceased picketing.

> However, the Order specifically enjoined the Union from
>
> > threatening, coercing, or restraining *Tidewater Barge Lines, Inc.* . . . in any manner or by any means, including picketing, *where in any case an object thereof is to force or require Tidewater Barge Lines, Inc.* . . . *to refuse to perform services and/ or cease handling, transporting, or otherwise dealing in the products of, or to cease doing business with Marubeni-Columbia Grain, Inc. (CGI), or any other person engaged in commerce*, or in an industry affecting commerce, or with each other.

Opinion and Order at 22-23 (emphasis added). Thus, the court's injunction was not limited to the Union's picketing at Tidewater's spud barges or its labor dispute with CGI. Instead, the order enjoined all secondary picketing of Tidewater, i.e., when the purpose of such picketing was to "force or require" Tidewater to "refuse" or "cease" doing business with CGI "or any other person engaged in commerce." Id. Accordingly, Local 4 violated the court's injunction by picketing Tidewater at the TCG facility, a neutral site. Although the Union argues otherwise, the evidence submitted makes clear that Local 4's picketing was targeted at Tidewater tugs attempting to retrieve Barge 83 from TCG's dock. Exs. B-E.

Again, I find it difficult to accept that the Union did not understand that the court's order prohibited the Union from picketing Tidewater at a neutral site, regardless of whether the

7 - OPINION AND ORDER

site was a "Tidewater location." Indeed, the entire discussion preceding the Conclusion and Order discussed and analyzed whether the Union was engaging in unlawful secondary picketing of Tidewater at a neutral site. Opinion and Order at 11-18. Given that UGC is not affiliated with TCG and has no presence at the TCG Pasco facility, the TCG dock is a neutral site. Although the Union suggests that TCG was an "agent" of UGC by storing UGC grain, the Union proffers no persuasive argument or evidence to support that assertion.

That said, I decline to rescind the fine suspension or award damages. Significantly, sanctions for civil contempt are intended to "coerc[e] compliance with a court order" and "compensat[e] the prevailing party." Ahearn, 721 F.3d at 1128. Though I do not find the Union's interpretation of the court's order reasonable, I recognize that the "Notice" of contempt distributed by the Union - and not objected to by this Court, Petitioner, or Tidewater - prohibited the Union from picketing "any Tidewater location." See, e.g., doc. 59, Ex. A. Further, the Union's picketing was short-lived and ceased voluntarily within several days, after it learned of Tidewater's ownership interest in TCG. More than five months had passed without incident since the contempt finding on October 31, 2013, and no further violations of the injunction have been reported. Thus, I

8 - OPINION AND ORDER

do not find that the fines or an award of damages are necessary to coerce the Union's continued compliance.

With respect to compensation, Tidewater has a pending action against the Union under § 303 of the Labor Management Relations Act (LMRA) and seeks damages resulting from the Union's unlawful secondary picketing. <u>Tidewater Barge Lines, Inc. v. Int'l Longshore & Warehouse Union</u>, Case No. 3:13-cv-01758-AA (Oct. 2, 2013). In that proceeding, Tidewater may seek damages caused by the Union's picketing in April 2014, thus providing Tidewater with a means of compensation. "It has long been the case that a Section 303 lawsuit and the pursuit of administrative enforcement of Section 8(b)(4) coexist as independent avenues for a party wronged by a union's unfair labor practices." <u>Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union</u>, 721 F.3d 1147, 1156 (9th Cir. 2013); <u>see also</u> <u>Plumbers & Fitters, Local 761 v. Matt J. Zaich Constr. Co.</u>, 418 F.2d 1054, 1057 (9th Cir. 1969) (an "action under section 303" is "not dependent on prior administrative determinations."). I recognize that this court may award damages for contemptuous conduct, regardless of the remedy available under § 303. <u>Ahearn</u>, 721 F.3d at 1128-29. However, given the specific circumstances of this case, I find it more appropriate to determine damages in the context of Tidewater's § 303 action rather than pursuant to a finding of contempt.

9 - OPINION AND ORDER

Nonetheless, I exercise my discretion and award attorney fees incurred by Petitioner and Tidewater in bringing the petition for further contempt and responding to the Union's opposition. Even if individual Union members could have misunderstood the injunction's scope in light of the Notice, the Union's attorneys and/or officers should not have operated under such a misapprehension. Accordingly, once Petitioner's and Tidewater's counsel provided the Union with notice that Local 4's conduct violated the injunction, the picketing should have ceased. It did not, and Petitioner and Tidewater thus incurred unnecessary attorney fees in bringing the petition and responding to the Union's opposition.

In sum, I find that the imposition of attorney fees combined with the specter of greater damages in Tidewater's LMRA action provides adequate deterrence against future violations of the court's order and injunction. I further clarify the scope of the original injunction, as set forth below.

## CONCLUSION

The Petition for Contempt (doc. 68) is GRANTED in part and DENIED in part, as set forth below:

IT IS HEREBY ORDERED that Respondent Local 4, its officers, attorneys and participating members are adjudged in civil contempt of the court's Order dated October 15, 2014 based on

10 - OPINION AND ORDER

Respondent's conduct occurring from April 12 through April 17, 2014, and that:

(1) All Respondents fully comply with all the terms of the Order, the Civil Contempt Order, as well as this Opinion and Order, in that **all Respondents shall cease picketing Tidewater tugboats, barges, and spud barges when located at neutral sites or locations unaffiliated with UGC or CGI**;

(2) Respondents, within twenty-four (24) hours, sign a notice ("Notice"), to be approved by this Court prior to distribution, stating that Respondent Local 4 was found in further contempt of the Order, denouncing the contumacious conduct, explaining the terms of the court's Orders, and directing Respondents' officers, agents, employees, attorneys, affiliated locals, and all members and persons acting in concert or participation with them to refrain from similar conduct;

(3) Respondents, within forty-eight (48) hours, distribute said Notice to each of their officers, representatives, employees, agents, affiliated locals, and members involved with work performed, or activities taking place, on the Snake and Columbia Rivers and proximate to Tidewater or its facilities, including those in Pasco, Washington;

(4) Respondents, within three (3) days, shall each file affidavits of compliance with the Court, with copies served simultaneously with Petitioner, stating with specificity how

11 - OPINION AND ORDER

each of Respondents have complied with this Order, including how and to whom copies of the Notice and this Order have been provided; and

(5) Respondents shall reimburse Petitioner and Tidewater their reasonable attorney fees incurred in association with the petition for further contempt. Within twenty-one days of this order, and after conferral with Union counsel, Petitioner and Tidewater shall submit affidavits in support of attorney fees. The Union may file objections within fourteen days after the submission of affidavits.

IT IS SO ORDERED.

DATED this 24th day of June, 2014.

_____
Ann Aiken
United States District Judge

12 - OPINION AND ORDER